# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                    Case No. 3:02CR69(CFD)

v.

ARTHUR PUGH                                          July 23, 2008

## MOTION TO AMEND JUDGMENT WITH AUTHORITIES

The defendant, Arthur Pugh, respectfully requests that the Court amend the Judgment in his case to reduce his sentence (a) pursuant to 18 U.S.C. § 3582(c)(2) and (b) pursuant to United States v. Crosby, 397 F.3d 103 (2d Cir 2005).

The defendant was sentenced on February 26, 2005 under the then applicable crack cocaine Guideline to 360 months and for an additional 60 months of consecutive time for possession of a firearm in furtherance of a drug trafficking crime.

Subsequent to the defendant's sentencing, the crack guidelines changed, and the Sentencing standards were revised by the United States Supreme Court and the Court of Appeals for the Second Circuit so as to make the Guidelines advisory only in nature, and not mandatory.

## I.    FACTS

The defendant was found guilty after a jury trial on September 5, 2003 on charges of possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A)(iii) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A)(i). [1] The PSR attributed 85 grams of crack cocaine to him and determined that he qualified as a career offender pursuant to 4B1.1 based upon his

---

[1] The defendant was represented by Attorney Richard S. Cramer at trial.

prior criminal history. The PSR placed him in a Total Offense Level of 37 (P.S.R. ¶ 18), and a Criminal History of VI (P.S.R. ¶ 33), based upon a total of 28 criminal history points.

At sentencing, the Court refused to adopt any of the departure grounds cited by the defendant2. He was sentenced strictly under the Guidelines, with no discussion or reference to the 3553(a) criteria. The Court stated that it was sentencing the defendant at the bottom of the sentencing range, to 360 months on the crack cocaine count3. (The firearms count of 60 months was mandatory.) Had the defendant been sentenced under the revised crack cocaine guidelines, his range would have been two levels less, or at a total offense level of 292-365 months, as opposed to the prior crack sentencing range of 360 years to life.

## II.     AMENDMENT 706 AND THE CRACK-POWDER DISPARITY

Amendment 706 to the Sentencing Guidelines took effect on November 1, 2007. See U.S.S.G.,App. C, Amdt. 706 (2007). This amendment alters the drug quantity table set forth in U.S.S.G. § 2D1.1, reducing by two levels the base offense levels for offenses involving crack cocaine. See id. The amendment was adopted in an effort to address, at least in small part, the dramatic and unfair disparity between sentences for offenses involving crack cocaine and otherwise similar offenses involving powder cocaine. See id.

The unfairness of the disparate treatment between crack and powder cocaine offenses is well-documented and indisputable. See generally United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2007) (hereinafter "2007 Sentencing Commission Report"); see also Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007). The disparity itself and the underlying assumptions giving rise to it have largely been discredited, as described by the Supreme Court in Kimbrough:

---

[2] Sentencing transcript, p. 37.
[3] Sentencing transcript, p. 38.

First, the Commission reported, the 100-to-1 ratio rested on assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support. [The] ratio Congress imbedded in the statute far 'overstates' both `the relative harmfulness' of crack cocaine, and the 'seriousness of most crack cocaine offenses'. For example, the Commission found that crack is associated with 'significantly less trafficking-related violence ... than previously assumed.' It also observed that 'the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure.' The Commission furthermore noted that 'the epidemic of crack cocaine use by youth never materialized to the extent feared.'

Second, the Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low- level dealers. Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers. But the 100-to-1 ratio can lead to the 'anomalous' result that 'retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced.'

Finally, the Commission stated that the crack/powder sentencing differential 'fosters disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held perception' that it 'promotes unwarranted disparity based on race.' Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed 'primarily upon black offenders'.

Kimbrough, 128 S. Ct. at 568 (internal citations omitted).

The Supreme Court found that it was not unreasonable for a district court to conclude that the 100-to-1 "crack/powder disparity is at odds with § 3553(a)," resulting in sentences greater than necessary to serve the required purposes. Id. After Kimbrough was decided, the Sentencing Commission made its amendments to § 2D I.1 retroactive — an unusual step — in an effort "to alleviate some of the urgent and compelling problems associated with the penalty structure for crack cocaine offenses." See Sentencing Guidelines for United States Courts, 73 Fed. Reg. at 220. In fact, the Sentencing Commission emphasized that the amendment is not a complete response to the serious inequities in the Sentencing Guidelines for crack offenses:

> The Commission ... views the amendment only as a partial remedy to some of the problems associated with the 100-to-I drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-I drug quantity ratio.

2007 Sentencing Commission Report, at 10.

It was a recognition of a very serious flaw in the sentencing guidelines that led to the amendment at issue here. There can be no question but that "the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." Kimbrough, 128 S. Ct. at 575. The significance of this flaw is not lessened by the details of a specific defendant's criminal history. Mr. Pugh's sentence was unjustly severe, partly because of the dramatic disparity between crack and powder cocaine offenses in the guidelines applicable at the time of his sentencing — guidelines which were then binding on this Court. The Sentencing Commission recognized this injustice and set out to address it by enacting an amendment that would close the gap, if only slightly, between sentences for the two forms of cocaine. Mr. Pugh is no less entitled to a correction of the injustice of the old crack guidelines than is any other defendant.

**A.  The Defendant's Base Offense Level Has Been Reduced by the Amendment.**

Although Mr. Pugh's base offense level, as determined by § 2D1.1 of the Guidelines, has in fact been reduced by the amendment, the Government may assert that Mr. Pugh is ineligible to reap any benefit from the amendment because he was found to be a "career offender" under the then-mandatory Guidelines.' The Government may contend that Mr. Pugh's sentence therefore did not rest on the provision regarding crack cocaine in Section 2D 1.1, which has been amended. The Government may conclude that the new crack guidelines do not lower the defendant's guideline calculation and that he therefore is not entitled to have his sentence

reconsidered by the Court. The defendant respectfully disagrees.

Section 3582(c)(2) requires only that a defendant's guideline range have been "based on" a guideline provision that was retroactively lowered, in order to qualify for a reduction. See 18 U.S.C. § 3582(c)(2). Mr. Pugh's term of imprisonment was "based on" the old drug quantity table — even though his guideline range was ultimately increased under Chapter 4 of the Guidelines — and, as set forth above, the sentencing range applicable to him under that table has been reduced by the amendment. He therefore is entitled to a resentencing.

It is impossible, in applying the Guidelines properly, to "base" a defendant's guideline range on the career offender provision standing alone. The offense level called for by the career offender provision requires comparison with the base offense level before it can be applied. See U.S.S.G. § 4B1.1(b) (Nov. 2007) ("if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply"). A guideline range that is adjusted under the career offender provision is actually "based on" the guideline sentence that results from applying Chapters 1 through 3 of the Guidelines, because the determination of this range is necessary to trigger application of the career offender enhancement.

The Guidelines are applied in order, starting with Chapter 1 of the Guidelines Manual and ending with Chapter 5. See U.S.S.G. § 1B 1.1 (Nov. 2007). In no case can a court simply jump to Chapter 4 and apply the career offender guideline. In other words, application of a Chapter 4B enhancement is neither the beginning nor the end of the calculation of a defendant's guideline range. Rather, it is simply one step in doing so. And that being so, a defendant's guideline range is "based on" Chapters 1, 2, 3 and 5, even if the defendant receives a Chapter 4 enhancement.

Any argument that application of the career offender provision means that a defendant's guideline range "did not rest on" § 2D 1.1 improperly attempts to rewrite §3582(c)(2) to mean something it plainly does not mean, and cannot mean, in light of the structure of the Guidelines. Under such a reading, only a defendant whose sentence was based entirely and solely on the amended provisions of § 2D 1.1 is eligible for resentencing. Such an argument disregards the complex nature of a Guidelines calculation.

The Supreme Court has acknowledged that a sentence under the Guidelines regime is not "based on" just one factor or provision. To the contrary, "district court judges determine sentences based on the various offense-related and offender-related factors identified by the Guidelines of the United States Sentencing Commission." Burns v. United States, 501 U.S. 129, 133 (1991) (emphasis added); cf. United States v. Fuller, 426 F.3d 556, 558 (2d Cir. 2005) (noting that "the District Court sentenced Fuller principally to 151 months' imprisonment in part based on multiple upward departures pursuant to the" Guidelines). Every sentence under the Guidelines system is determined "based on" a variety of factors and provisions. Every sentence is based — in part — on three, four, five, or more provisions in the Guidelines manual.

The word "base," when used as a verb, means "to make, form, or serve as a base for." Merriam-Webster Online Dictionary, 2008 (emphasis added).5 There is an important difference between this definition, and the one the Government proposes, which would be "to make, form, or serve as the base for."

When a defendant is convicted of an offense involving crack cocaine, the provisions of § 2D1.1 always come into play but only as one of many factors that are eventually considered in reaching a recommendation under the Guidelines. Indeed, it is practically unheard of for a Guidelines range to be calculated solely on the basis of § 2D1.1; to the contrary, the great

majority of sentencing calculations require consideration of numerous provisions of the

Guidelines Manual. An offense level may be increased or decreased to account for, inter alia, the

defendant's role in the offense, the nature of the victim, the means used to commit the offense,

the defendant's record of previous convictions, the defendant's lack of honesty in dealings with

the Court, or his assistance to the Government. A sentence in a crack cocaine case that is arrived

at after application of the Guidelines provisions relating to these factors is still "based on" §

2D1.1. Sometimes, the eventual sentence arrived at seems to bear little relation to the base

offense level determined by § 2D1.1, but no matter the end result, no matter the twists and turns

taken to arrive there, that sentence is — at least in part — "based on" § 2D1.1.

Even the language of the PSR, when compared to the language of § 3582, suggests that

Mr. Pugh is eligible for resentencing. The PSR states quite clearly that the "base offense level"

applicable to Mr. Pugh's offense — and the starting point for the determination of the

appropriate sentence in his case — was 37, and that the base offense level "is found in Guideline

§ 2D1.1." PSR 24. What else could the "base offense level" be but the offense level on which, in

the first instance, the defendant's guideline range is based? It is of course true, as discussed

above, that other sections of the Guidelines came into play after the base offense level was

determined, but none of the adjustments made after the initial determination can undo the fact

that the base offense level was determined by 2D1.1. Would a defendant's sentence not be "based

on" § 2D1.1 if, after the base offense level is determined under that section, the level was then

adjusted under § 3B1.1 or § 3B1.2 to reflect the defendant's role in the offense? Would a

defendant's sentence not be "based on" § 2D 1.1 if the offense level is adjusted under § 3E 1.1 to

award credit for acceptance of responsibility?

The fact is, a Guidelines sentence is "based on" a variety of factors, and in this case, the

starting point — the true base on which the determination as to what an appropriate sentence would be for Mr. Pugh was built — was the offense level of 37 assigned by § 2D 1.1. That offense level has been amended, and Mr. Pugh should get the benefit of that amendment.

There is another problem with the argument that Mr. Pugh, as a career offender, is per se barred from resentencing. After Booker, Kimbrough, and Hicks, this Court may consider, in fashioning an appropriate sentence, the disparity between a defendant's § 2D 1.1 guideline range and the range that is suggested by § 4B1.1. In other words, the Court may find that the increased sentence called for by a career offender enhancement is unreasonable when compared to the otherwise applicable Guidelines sentence. In making that determination, the Guidelines range that would be applicable without the career offender enhancement — which, in this case, is set by § 2D1.1 — is obviously significant. The change in the § 2D1.1 range occasioned by the recent amendments is, therefore, also of significance.

If this Court determines that it would have imposed a lower sentence had the base offense level under § 2D1.1 been two levels lower (which would have made the differential between the ordinary crack guideline range and the career offender crack guideline range even greater), then the defendant's sentence was based on a guideline range that has been subsequently lowered by the amendments. Moreover, this Court has the jurisdiction to make its own determination as to its jurisdiction to lower Mr. Pugh's sentence. See, e.g., United States v. Ruiz, 536 U.S. 622, 628 (2002) ("a federal court always has jurisdiction to determine its own jurisdiction").

**B.  The Crack/Powder Disparity May Be Considered in a § 3582 Resentencing**.

Prior to the Supreme Court's decisions in Kimbrough and Gall, sentencing courts erroneously believed that they were not permitted to consider the inequity of the vast disparity between penalties for crack and cocaine offenses in determining an appropriate sentence. Now, that

disparity is a permitted consideration. The Second Circuit has recently noted that Kimbrough and

Gall confirm

> the broad deference that this Circuit has afforded the sentencing discretion of
> the district courts. However, until Kimbrough and Gall, this Circuit tended to
> discourage district courts from deviating from the crack cocaine Guidelines.
> Our opinion in United States v. Castillo, 460 F.3d 337 (2d Cir. 2006), may
> have been over-read or misread to inhibit any deviation. District courts may
> also have been inhibited from exercising their full discretion by the fact that
> the Sentencing Commission borrowed the 100-to-1 Guidelines ratio from the
> mandatory minimums for drug offenses decreed by Congress. Id. at 567
> (explaining origin of Guidelines crack to powder ratio). Therefore, when a
> district court sentenced a defendant for a crack cocaine offense before
> Kimbrough, there was an unacceptable likelihood of error; certainly, the
> court acted under the influence of a widespread assumption that is now
> known to be erroneous.

United States v. Regalado, 518 F.3d 143, 147 (2d Cir. 2008).

The Second Circuit went on to give specific instructions to district courts faced with a

resentencing pursuant to the crack amendments:

> In deciding whether to modify the sentence, district courts must consider the
> factors set forth in 18 U.S.C. § 3553(a) anew and in light of Gall and
> Kimbrough to the extent that they may be applicable, and relevant
> Sentencing Commission policy statements. See 18 U.S.C. §
> 3582(c)(2). Id. at 151.

In other words, this Court may not have been aware, at the time Mr. Pugh was sentenced

in 2004, of the full scope of its authority to consider the disparity between crack and powder

sentences, and thus, it may take that factor into account now.

## C.  Sentencing Disparity Among Otherwise Similar Defendants.

One of the factors that the Court is required to consider in determining an appropriate

sentence is "the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (2008). One of

the effects of the recent — but very limited — amendments to the Guidelines is that some

defendants may qualify for a reduction while others may not, even though all were convicted of very similar conduct. This new form of disparity in sentencing among defendants may be considered by the Court in determining an appropriate sentence.

Courts in this District have already issued amended judgments reducing the sentences of over 150 defendants since March 3, 2008. Many more motions remain under consideration, and many motions that were denied on are on appeal to the Second Circuit. Nationally, nearly 5,000 defendants had received sentence reductions as of May 13, 2008. See U.S. Sentencing Commission, Preliminary Crack Cocaine Retroactivity Data Report, May 2008, at Table 1.6 Of those defendants whose sentences were reduced, more than 10% were in Criminal History Category VI. See id. at Table 5.74

The Guidelines system was created to reduce the disparity among sentences "imposed by different federal courts for similar criminal conduct by similar offenders." U.S.S.G. § IA1.1 cmt. n. 3 (2008). Presumably, all defendants who are found to be in Criminal History Category VI are to be considered "similar" at some basic level for purposes of sentencing. The mere fact that Mr. Pugh happens to be a CHC VI because of his status as a career offender should not prevent him from getting the same reduction.

**III.    The Defendant ought to be Resentenced pursuant to <u>United States v. Crosby</u>, supra.**

    **A.    This Court Is Authorized to Impose an "Individualized Sentence" without regard to the Guidelines Range**

A very recent Second Circuit decision, <u>United States v. Jones</u>, 05-5879-cr, 2008 WL 2500252b (2d Cir June 24, 2008), elaborates at length on the necessity for the "individualized assessment" of the district court, which "has access to, and greater familiarity with, the

---

[4] Available online at:
http://www.ussc.gov/USSC_Crack_Cocaine_Retroactivity_Data_Report_19_May_08.pdf

individual case and the individual defendant" before it and is charged with the "particular trust" of ensuring that every convicted person be considered as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

This strong language by Judge Reena Raggi describes the need for an individualized sentence, and not to blind adher to applicable guideline ranges. Although the Court is statutorily obligated to give fair consideration to the Guidelines before imposing sentence, in the end it must make an "individualized assessment" of the sentence warranted by Sec. 3553(a) based upon the facts presented. Any prior precedent requiring the sentencing court to demand "extraordinary circumstances" to justify a non-Guidelines sentence is no longer operative.

**B.      This Court Should Consider the Advisory Guidelines along with All Relevant Factors under 18 U.S.C. §§ 3553(a) and 3661 in Determining a Sentence That Is No Greater than Necessary to Achieve the Purposes of Sentencing.**

After determining the sentence under the Guidelines, the Court has a statutory duty to consider factors independent of the Guidelines in arriving at a final sentence that is in compliance with the sentencing mandate of § 3553(a). Given the factors under § 3553(a) present in this case, it is apparent that the Guidelines produce an unreasonable range of imprisonment in this case. As this Court is aware, in United States v. Booker, 125 S.Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. The appropriate remedial measure required the severance and excision of two provisions of the federal sentencing statute, including 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. See Booker, 125 S. Ct. at 757 (2005) (Breyer, J.). "So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory."

125 S.Ct. 738, 757.  As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . , but it permits the court to tailor the sentence in light of other statutory concerns as well." Id.

This Circuit has held that in determining a sentence in compliance with that mandate, a district court must consider a variety of factors in imposing a sentence. United States v. Crosby, 379 F.3d 103 (2nd Cir. 2005).  Although a sentencing court is still required to consider the Guidelines in making its sentencing determination, it is now required to consider factors not found in the Guidelines. See Crosby, 397 F.3d at 115 (noting that making the Guidelines per se reasonable "would effectively re-institute mandatory adherence to the Guidelines").

### 1.    The § 3553(a) Sentencing Mandate

When sentencing a defendant, a district court is bound to follow the dictates of 18 U.S.C. § 3553(a).  "Prior to Booker/Fanfan, the section 3553(a) requirement that the sentencing judge "consider" all of the factors enumerated in that section had uncertain import because subsection 3553(b)(1) required judges to select a sentence within the applicable Guidelines range unless the statutory standard for a departure was met.  Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires renewed significance." Crosby 397 F.3d at 111.

Ultimately, § 3553(a) requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. See United States v. Williams, 475 F.3d 468, 476-77 (2nd Cir. 2007).  While district courts must in all cases "consider" the guideline range, Booker, 543 U.S. at 245-46, the guidelines do not subordinate the other factors in § 3553(a) in making this determination. Id.

12

According to the Supreme Court, the sentencing judge, after determining the guideline range, may decide that the guideline sentence:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.O, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f).

Rita v. United States, 127 S.Ct. 2456, 2465 (2007).

The Court in Rita also stressed the importance of the sentencing judge providing reasons for the sentencing decision. Id. at 2468. Although the judge may, absent non-frivolous arguments to the contrary, often say little when he imposes a guideline sentence, he must respond when "a party contests the Guidelines sentence generally under § 3553(a) – that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way – or argues for departure[.]" Id. The Court thus placed nothing off-limits for district courts, not even arguments that the guideline reflects "an unsound judgment" generally, but instead placed on district courts the burden to explain why they impose the sentences they do. Id.

### 2.    Supreme Court Clarifies Booker and Rita

On December 10, 2007, the Supreme Court decided two cases – each by a comfortable 7-2 margin – emphasizing that in the post-Booker world federal district judges have significant discretion to impose sentences below (or above) those called for under the Federal Sentencing Guidelines. See Kimbrough v. United States, 128 S.Ct. 558, 570 (2007); Gall v. United States, 128 S.Ct. 586, 597 n.6 (2007). These new decisions, reinforce and further clarify the rulings in Booker, and Rita, that the Guidelines are merely advisory (one factor among several that must be

considered by the sentencing judge) and that appellate courts may review sentences only for

reasonableness, under the deferential abuse of discretion standard.  Section 3553(a) is comprised

of two distinct parts: the "sentencing mandate" contained in the prefatory clause of Section

3553(a) and the "factors" to be considered in fulfilling that mandate.  Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the advisory guideline range;
> (5) any pertinent policy statements issued by the Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities; and
> (7) the need to provide restitution

## IV. CONCLUSION

The Western District of Virginia, in holding that a defendant should receive a reduction

in his sentence, summarized the core basis for its decision succinctly and eloquently:

> The Sentencing Commission amended the sentencing guidelines to correct what many have perceived as gross inequities between sentences for crack cocaine offenses and sentences for powder cocaine offenses. The Commission, with widespread support in the judiciary, made the amendments retroactive. This defendant, like 19,500 similarly situated inmates across the nation, is not the undeserving recipient of blind fortune. His sentence is being reduced because in the judgment of the Commission, the judiciary, Congress, and much of America — with whom I heartily concur — his original sentence was unfairly harsh when compared to sentences given to defendants for powder cocaine offenses. In truth, his reduced sentence continues to reflect the disparity between the punishments for powder cocaine and crack cocaine offenses, but it is a step in the right direction.

United States v. Ayala, 540 F. Supp. 2d 676, 680 (W.D. Va. 2008).

For the reasons set forth above, the defendant, Arthur Pugh, respectfully urges the Court to issue an amended judgment reducing his sentence in accordance with the amended guidelines applicable to crack cocaine cases and based upon Crosby, supra, from the 420 months to which he has been already sentenced to an "individualized sentence", pursuant to Jones, supra.

Respectfully submitted,
The Defendant, Arthur Pugh

Dated: July 23, 2008          /s/_____
                              JONATHAN J. EINHORN
                              His Attorney
                              412 Orange Street
                              New Haven, Connecticut  06511
                              Bar No. ct00163
                              Phone: 203-777-3777
                              Fax: 203-782-1721

                              Email: Einhornlawoffice@gmail.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 23, 2008, a copy of the foregoing motion was mailed, postage prepaid to the following:

**Michael J. Gustafson**
U.S. Attorney's Office-NH
157 Church St., 23rd floor
New Haven, CT 06510
860-760-7960

**Raymond F. Miller**
U.S. Attorney's Office-NH
157 Church St., 23rd floor
New Haven, CT 06510
203-821-3700

/s/_____
JONATHAN J. EINHORN